# IN THE UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No.:

PATRICK MULLINIX,

      Plaintiff,

v.

THIRTY-EIGHT STREET, INC.,
BERNARD MOYLE, AND ROGER
BLOSS,

      Defendants.
_____/

## COMPLAINT

Plaintiff, Patrick Mullinix ("Mullinix" or "Plaintiff"), hereby sues Defendants, Thirty-Eight Street, Inc. ("TESI"), Bernard T. Moyle ("Moyle"), and Roger Bloss ("Bloss") (collectively "Defendants"), as follows:

## NATURE OF THE ACTION

1. This case is brought pursuant to the Court's diversity jurisdiction and arises out of a contractual dispute between the parties. Defendants have failed and refused to pay Plaintiff monies earned under certain incentives promised by Defendants in connection with Defendant TESI and its affiliates' sale of business assets to a third party. Plaintiff fully performed his obligations under the parties' agreement and the conditions precedent to payment of the incentives have been fully satisfied. As alternatives to Plaintiff's breach of contract claims, Plaintiff substantially and reasonably relied upon Defendants' promises to his detriment, and Defendants should be estopped from reneging on their promises to Plaintiff. Additionally, Defendants knowingly and recklessly made material misrepresentations to Plaintiff to fraudulently induce him

to perform certain contractual obligations; however, Defendants never intended to pay Plaintiff the incentives as promised.

## PARTIES

2. Mullinix is an individual residing in Lakeway, Travis County, Texas.

3. TESI is a Florida corporation with its principal place of business at 2900 North University Dr. Suite 46, Coral Springs, FL 33065.

4. Moyle is an individual and a citizen of the State of Florida, residing at 3061 NW 112th Avenue, Coral Springs, FL 33065. Moyle is publicly listed as a director, president and CEO of TESI.

5. Bloss is an individual and a citizen of the State of Nevada, residing at 3870 Quartz Canyon Drive, Henderson, NV 89052-3177. Bloss is publicly listed as a director, secretary and COO of TESI.

6. Moyle and Bloss are the sole equal shareholders of TESI.

## JURISDICTION AND VENUE

7. This Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 because this action is between citizens of different States and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

8. This Court has personal jurisdiction over TESI because its principal place of business is in Broward County, Florida.

9. This Court has personal jurisdiction over Moyle because he is domiciled in Coral Springs, Florida, has general and specific contacts with the State of Florida, and is amenable to personal jurisdiction in this district.

10. This Court has personal jurisdiction over Bloss because he regularly conducts business in Florida, has general and specific contacts with the State of Florida, and is amenable to personal jurisdiction in this district.

11. Venue is proper in the Southern District of Florida pursuant to 28 U.S.C. § 1391 because TESI and Moyle are domiciled here and Bloss regularly conducts business in this district. Additionally, a substantial part of the events or omissions giving rise to the claims asserted herein occurred in the Southern District of Florida and all Defendants are amenable to personal jurisdiction in this district.

## FACTUAL BACKGROUND

12. Prior to September 30, 2016, Mullinix served as Value Brands President for Vantage Hospitality Group, Inc. ("Vantage"), one of the largest international hotel companies with a broad spectrum of hospitality-related ventures. As a key executive, Mullinix was largely credited with the expansion, growth, and development of Vantage's vast portfolio of hotel brands and franchises. Mullinix's contract with Vantage ran annually and was renegotiated on at least a yearly basis.

13. At all relevant times, the majority of Vantage's stock was owned by TESI, Bloss, and Moyle. In turn, the Vantage hotel brands were owned through various subsidiaries and affiliates of Vantage. As the controlling shareholders of TESI, Bloss and Moyle fully controlled the management of Vantage and its related companies.

14. On or about September 13, 2016, TESI, Vantage, and the related Vantage companies (collectively "Sellers") entered into an asset purchase agreement ("APA") with Red Lion Hotels Corporation ("Red Lion"), through several of Red Lion's wholly owned subsidiaries (collectively "Buyers"). Buyers agreed to purchase Sellers' operating assets and assume certain liabilities of Sellers relating to specified hotel brands and brand extensions. As a condition of the

3

acquisition, Bloss and Moyle joined Red Lion's executive management team post-closing pursuant to at-will employment contracts.

15.     The APA closed on September 30, 2016. As consideration for the acquired assets, Buyers paid Sellers approximately $23 Million in cash and issued shares of stock to TESI. As the principals of Sellers, Bloss and Moyle were the primary beneficiaries of substantially all the consideration Sellers received under the APA.

### The Earn-Outs

16.     The APA also included several opportunities post-closing for Sellers to receive additional consideration in the form of cash and stock. In particular, section 2.8 of the APA entitled Sellers to the additional consideration if certain operating targets were achieved by the first (the "2017 Earn-Out") and second (the "2018 Earn-Out") anniversaries of the APA closing (collectively the "Earn-Outs"). The Earn-Outs ranged from $2.25 Million to $4 Million in cash and from 207,000 to 414,000 in shares of stock. Bloss and Moyle largely controlled how such additional consideration would be disbursed or issued.

17.     The Earn-Outs would be paid to Sellers pursuant to one of several ways under the APA including, one, upon hitting certain volume targets based on hotel room counts or, alternatively, upon hitting certain revenue targets from membership fees, royalties and reservations fees. Each of these two formulas required Red Lion to maintain separate books and records for new business segments, refrain from disposing of certain assets, and operate the business in accordance with strict guidelines to ensure the integrity of the Earn-Out calculations.

18.     Another way the Earn-Outs could be realized was under Section 2.8(j) of the APA, which provided that Red Lion could, at any time and in its sole discretion, deem the specific targets met and pay Sellers the maximum level achievable on the Earn-Outs.

**The 2016 Agreement**

19.   Mullinix's employment with Vantage was scheduled to terminate upon the closing of the APA.  Prior thereto, Mullinix was actively negotiating with several prospective employers for a new job.  Among several significantly more lucrative opportunities Mullinix was pursuing, Red Lion made an offer to him to remain on with Red Lion after the closing.

20.   Mullinix had ongoing communications with TESI (including through TESI's general counsel, Judith Jarvis), Bloss, and Moyle regarding the terms of his impending termination of employment with Vantage, the Red Lion offer and the other more lucrative opportunities available to him.

21.   In particular, Mullinix met personally with Bloss and Moyle in Arizona on September 27, 2016 and subsequently with Bloss in Houston, Texas.  During these meetings Defendants requested that Mullinix accept Red Lion's offer, as it was understood his services would be critical to Sellers achieving the Earn-Outs.  The parties negotiated incentives for Mullinix to accept Red Lion's offer, and these incentives would be included in either his employment agreement with Red Lion or a separate agreement between Defendants and Mullinix.

22.   As a result of such negotiations, Mullinix and Defendants reached an agreement whereby, if Mullinix accepted Red Lion's offer, Defendants would i) pay Mullinix a lump sum of $35,000, making up for a decrease in his annual base salary with Red Lion from what he previously earned with Vantage, and ii) if the Earn-Outs were paid to Sellers under the APA, Defendants would pay Mullinix an amount necessary to net him $125,000, after taxes, upon Sellers' receipt of the 2017 Earn-Out, and an amount necessary to net him $375,000, after taxes, upon Sellers' receipt of the 2018 Earn-Out (the "2016 Agreement").

23. Mullinix requested that the parties' agreement be reduced to writing. However, TESI (including Jarvis), Bloss, and Moyle advised Mullinix that they could not memorialize their agreement because a written contract could potentially run afoul of certain provisions of the APA with Red Lion, and also potentially jeopardize Bloss and Moyle's at will employment contracts with Red Lion.

24. To his detriment, Mullinix accepted Red Lion's offer of employment and withdrew consideration of the other employment opportunities available to him, all in reliance on Defendants' promises to pay the agreed upon incentives for doing so.

25. Shortly after Mullinix began employment with Red Lion, Defendants issued him a TESI check for $35,000 pursuant to their agreement. Thereafter, in further reliance on Defendants' promises to pay him the incentives under the parties' agreement, Mullinix continued working for Red Lion and declined subsequent job opportunities with terms superior to those under his contract with Red Lion. For their part, Defendants frequently reminded Mullinix of the incentives he would receive on any Earn-Outs paid to Sellers pursuant to the APA.

26. Ultimately, with the substantial help of Mullinix, the targets for the 2017 Earn-Out were met and Red Lion paid Sellers the maximum 2017 Earn-Out. Pursuant to the parties' agreement, Defendants became obligated to pay Mullinix an amount necessary to net him $125,000 after taxes immediately upon Sellers' receipt of the 2017 Earn-Out.

**The 2018 Agreement**

27. In anticipation of receiving his net $125,000 payment following the 2017 Earn-Out, and after numerous unsuccessful attempts to communicate with Defendants, Mullinix finally reached Bloss on his cell phone on February 12, 2018, to inquire about the status of the payment.

28. Although Bloss recalled an agreement between the parties, he claimed to have forgotten certain details of the incentive payments to Mullinix tied to the Earn-Outs. Specifically, Bloss "forgot" that the payments would be in an amount necessary to net Mullinix $125,000 on the 2017 Earn-Out and $375,000 on the 2018 Earn-Out, after applicable taxes. Bloss also claimed that, as he recalled, Mullinix's incentive on the 2018 Earn-Out was $200,000, not $375,000.

29. Mullinix was shocked that Defendants intended to breach their agreement with him and vehemently disputed Bloss' inaccurate recollection of the terms. After further argument, on the same call, Bloss offered to resolve the dispute by agreeing to pay Mullinix a gross sum of $125,000 on the 2017 Earn-Out, and a gross sum of $200,000 on the 2018 Earn-Out, if paid by Red Lion pursuant to the APA, so long as Mullinix stayed with Red Lion until the 2018 Earn-Out was secured.

30. At this point, Mullinix had already substantially relied upon Defendants' promises by accepting Red Lion's job offer and continuing his employment over the prior 16 months, all to the exclusion of other career opportunities. Mullinix was left with little choice other than to compromise his claim and accept the modified terms of the parties' agreement offered by Bloss. Mullinix, however, expressly conditioned his acceptance on Defendants' immediate payment of the $125,000 and Bloss immediately memorializing the modified terms in writing, to which Bloss agreed (the "2018 Agreement").

31. Prior to disconnecting the call with Mullinix, Bloss sent a group text to Mullinix, Moyle, and TESI's controller, Tim Liston, stating *in toto*:

> Gentlemen 👋 I have agreed to pay Patrick $125,000 on a 1099 payment for year one for year two, if we hit our earnout pay Patrick $200,000 on a 1099. Thanks

Immediately following this text, Bloss sent another text to the same group, stating *in toto*: "Pls pay the $125,000 ASAP". Mr. Liston responded to the group, stating *in toto*:

7

> I expect to be able to set up this week. Hopefully Wednesday. I need to hear from our payroll company. I am traveling all day tomorrow.

Liston further memorialized the parties' 2018 Agreement by subsequently emailing a copy of Bloss' initial February 12 text to Mullinix, Bloss, and Moyle.

32.     Four days later, Mullinix received a check in the amount of $125,000 issued by TESI, which included the following memo: "First Anniversary Earnout Payment per Discussion."

33.     Thereafter, Mullinix maintained his employment with Red Lion, foregoing other career opportunities, in reliance on Defendants' promise to pay him $200,000 if Sellers received the 2018 Earn-Out.  Likewise, Mullinix and Bloss remained in frequent contact during this time.

### Red Lion Guarantees the 2018 Earn-Out

34.     On or about April 27, 2018, Bloss advised Mullinix that an unexpected meeting was called among Bloss, Moyle, and Red Lion's management, the subject of which was unknown.  After the meeting, Bloss called Mullinix and elatedly advised him that Red Lion intended to deem the targets for the 2018 Earn-Out met and guarantee the entire payment of cash to Sellers and issuance of stock to TESI pursuant to the APA.

35.     Bloss confirmed that once Red Lion's guarantee of the 2018 Earn-Out was reduced to writing, Mullinix will have completed his obligations regarding Sellers' 2018 Earn-Out. When Mullinix asked about the timing of his $200,000 payment from Defendants, Bloss exclaimed: "Absolutely . . . [w]hen we get paid, you get paid."

36.     On May 22, 2018, Red Lion issued a press release announcing that it was guaranteeing the maximum 2018 Earn-Out.  The statement provided, in pertinent part:

> In recognition of this successful brand integration, RLH Corporation has also agreed to guarantee an earn-out payment in October 2018 in the amount of $3,000,000 and 276,000 shares of RLH Corporation stock *as described in the agreements documenting the 2016 acquisition*.

8

(Emphasis added). Red Lion's press release, in addition to its formal SEC filings reporting that the 2018 Earn-Out would be paid on October 5, 2018, confirmed that the 2018 Earn-Out was being paid pursuant to the terms and conditions of the APA.

### Defendants Refuse to Pay Mullinix

37. Defendants received the maximum $3,000,000 2018 Earn-Out payment on October 9, 2018 and, pursuant to the parties' 2018 Agreement, Defendants became obligated to pay Mullinix the $200,000 immediately thereafter. However, Defendants have failed and refused to pay Mullinix.

38. Mullinix subsequently learned Bloss and Moyle never intended to pay him the $200,000 on the 2018 Earn-Out as renegotiated between the parties in February 2018. Nor had Bloss and Moyle ever intended to fully pay Mullinix the incentives originally promised in 2016.

39. Instead, Bloss and Moyle intentionally made such false promises in 2016 to Mullinix to induce him to accept Red Lion's job offer and remain employed until the Earn-Outs were secured.

40. In 2018, Bloss and Moyle intentionally made the false promise to pay Mullinix the $200,000 to induce him to quietly settle their dispute and remain employed with Red Lion until the 2018 Earn-Out was secured. Bloss and Moyle needed to appease Mullinix and avoid alerting Red Lion to any dispute regarding his incentives under the Earn-Outs.

41. In this regard, Defendants' internal communications are particularly revealing. In a text from Moyle to Bloss on May 21, 2018, as they were negotiating the language of the May 22, 2018 press release with Red Lion, Moyle (clearly referring to Mullinix) suggested that Defendants claim they didn't hit the 2018 Earn-Out, "so when certain parties come a knocking remind them of that." Unquestionably, however, the 2018 Earn-Out was paid in accordance with the APA giving Red Lion the discretion to deem the targets met and pay Sellers, accordingly.

42. Similarly, in text exchanges between Moyle and Bloss on July 13, 2018, discussing Mullinix's imminent departure from Red Lion now that the 2018 Earn-Out had been secured, Moyle expressed that between Moyle and Bloss, "[m]eanwhile, 'mums the word . . .'". Moyle was clearly referring to their plan to not pay Mullinix the $200,000 after they received the 2018 Earn-Out.

43. At all relevant times, however, Moyle was fully aware of Defendants' obligation to pay Mullinix the agreed upon incentives. Moyle never objected to or questioned the parties' agreement. Indeed, he expressly authorized and acquiesced in the performance of Defendants' obligations thereunder by signing the check for the initial $35,000 under the 2016 Agreement, and the check for the $125,000 on the 2017 Earn-Out under the modified 2018 Agreement.

44. Between October 1, 2018 and November 19, 2018, Mullinix made ongoing attempts to communicate with Defendants about the status of Red Lion's payment of the 2018 Earn-Out to Sellers and Defendants' payment of the $200,000 to him. Mullinix's inquiries continued to be ignored or Defendants' responses thereto were evasive.

45. Mullinix has since learned that Moyle continued to pressure Bloss to inform Mullinix he was not entitled to the $200,000 on the 2018 Earn-Out. In doing so, Moyle suggested that Bloss give Mullinix one of several false explanations that the Sellers did not receive the 2018 Earn-Out under the APA. Moyle ultimately advised Bloss by email on November 5, 2018, referring to Mullinix, that Bloss "will need to resolve this one as he's 'your guy' and you're the one who had the dealings with him."

46. On or about November 20, 2018, Mullinix finally reached Bloss to discuss the overdue payment. Despite the parties' agreement, and Mullinix's full performance thereunder, Bloss told Mullinix that Defendants had no intention of paying him the $200,000.

47. Prior to bringing any action to recover the amounts owed by Defendants Mullinix made appropriate demands pursuant to Tex. Civ. Prac. & Rem. Code § 38.001; and, ARS § 12-341.01. All other conditions precedent to this action have occurred, been performed, or have otherwise been waived.

## COUNT I – BREACH OF CONTRACT
(2018 Agreement)

48. Plaintiff adopts and re-alleges the allegations in Paragraphs 1 through 47 above, as though fully set forth herein.

49. In September 2016, Mullinix and Defendants entered into an agreement the essential terms of which required Mullinix to accept Red Lion's offer of employment and maintain employment until such time as the Earn-Outs were secured under the APA. In return, Defendants would pay Mullinix the incentives alleged in greater detail above.

50. When Defendants breached the agreement by refusing to pay Mullinix the agreed amount on the 2017 Earn-Out received under the APA and also repudiated their obligation to pay Mullinix the agreed amount on any 2018 Earn-Out, the parties resolved the dispute and modified their agreement in writing on or about February 12, 2018 (*i.e.*, the 2018 Agreement). Specifically, if Mullinix accepted the compromised amount on the 2017 Earn-Out incentive and remained employed with Red Lion until Sellers secured the 2018 Earn-Out, Defendants agreed to pay Mullinix as follows:

11



The 2018 Agreement was further memorialized in an email from TESI's Tim Liston on February 20, 2018, copying and pasting the first text from Bloss' February 12, 2018 text.

51. Mullinix fully performed his obligations under the 2018 Agreement with Defendants.

52. Defendants received the maximum $3,000,000 2018 Earn-Out from Red Lion, and the condition precedent to Defendants' obligation to pay Mullinix the $200,000 was thereby satisfied in full.

53. Defendants' failure to pay Mullinix the $200,000 under the 2018 Agreement constitutes a breach of that contract.

54. Mullinix has been damaged as a direct result of Defendants' breach.

WHEREFORE, Plaintiff, Patrick Mullinix, demands judgment be entered in his favor and against Defendants awarding him compensatory damages, exemplary damages, attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001; ARS § 12-341.01, and, as Plaintiff may otherwise be entitled as a matter of law, costs, interest, and any further relief as this Court deems just and proper.

## **COUNT II – BREACH OF CONTRACT**
(2016 Agreement)

55. Plaintiff adopts and re-alleges the allegations in Paragraphs 1 through 47 above, as though fully set forth herein.

56. In the alternative, assuming *arguendo* this Court does not find that the parties executed an enforceable contract in and around February 2018 amending the prior September 2016 agreement, Mullinix fully performed his obligations under the original agreement with Defendants reached in September 2016 (*i.e.*, the 2016 Agreement).

57. The conditions precedent to Defendants' obligation to pay Mullinix the agreed incentives, *i.e.*, Red Lion's payments of the Earn-Outs to Defendants, were satisfied in full.

58. The essential terms of the parties' 2016 Agreement required Mullinix to accept Red Lion's offer of employment and maintain employment until such time as the Earn-Outs were secured under the APA and, in exchange, Defendants would pay Mullinix:

    (a)    $35,000.00 upon beginning employment with Red Lion;

    (b)    $125,000.00, net after taxes, if Defendants received the 2017 Earn-Out; and

    (c)    $375,000.00, net after taxes, if Defendants received the 2018 Earn-Out.

59. Mullinix fully performed his obligations under the 2016 Agreement with Defendants.

60. Defendants received the maximum 2017 Earn-Out and 2018 Earn-Out from Red Lion. As such, the conditions precedent to Defendants' obligation to pay Mullinix the net $125,000 and net $200,000 on each of the Earn-Outs, respectively, were satisfied in full.

61. Defendants' failure to pay Mullinix the full amounts on the 2017 Earn-Out and 2018 Earn-Out under the 2016 Agreement constitutes a breach of that contract.

62. Mullinix has been damaged as a direct result of such breach.

WHEREFORE, Plaintiff, Patrick Mullinix, demands judgment be entered in his favor and against Defendants awarding him compensatory damages, exemplary damages, attorneys' fees pursuant to Tex. Civ. Prac. & Rem. Code § 38.001; ARS § 12-341.01, and, as Plaintiff may otherwise be entitled as a matter of law, costs, interest, and any further relief as this Court deems just and proper.

## COUNT III –FRAUDULENT INDUCEMENT
(as to Bloss and Moyle)

63. Plaintiff adopts and re-alleges the allegations in Paragraphs 1 through 47 above, as though fully set forth herein.

64. In September 2016, Bloss and Moyle knowingly made material representations to Mullinix that they would pay him amounts necessary to net $125,000 and $375,000, after taxes, on any 2017 Earn-Out and 2018 Earn-Out, respectively.

65. At the time Bloss and Moyle made these statements to Mullinix, they knew the statements were false.

66. Bloss and Moyle intentionally and recklessly made these false statements to Mullinix to induce him to decline other more lucrative job opportunities, accept Red Lion's job offer, and maintain such employment until the Earn-Outs were secured under the APA.

67. Mullinix substantially and reasonably relied on the material misrepresentations made by Bloss and Moyle in September 2016, to his detriment.

68. Mullinix has been damaged as a direct result of Bloss and Moyle's material misrepresentations.

WHEREFORE, Plaintiff, Patrick Mullinix, demands judgment in his favor and against Defendants, Bloss and Moyle, awarding him compensatory damages, exemplary damages, and any further relief as this Court deems just and proper.

## COUNT IV – FRAUDULENT INDUCEMENT
(as to Bloss and Moyle)

69. Plaintiff adopts and re-alleges the allegations in Paragraphs 1 through 47 above, as though fully set forth herein.

70. On and around February 12, 2018, Bloss and Moyle knowingly made a material representation to Mullinix that he would be paid $200,000 on any 2018 Earn-Out.

71. At the time Bloss and Moyle made this statement to Mullinix, they knew the statement was false.

72. Bloss and Moyle intentionally and recklessly made this false representation to Mullinix to induce him to maintain his employment with Red Lion until the 2018 Earn-Out was secured under the APA, and relinquish and quietly settle any claims he had against Defendants under the parties' 2016 Agreement.

73. Mullinix substantially and reasonably relied on the material misrepresentation made by Bloss and Moyle on and around February 12, 2018, to his detriment.

74. Mullinix has been damaged as a direct result of Bloss and Moyle's material misrepresentation.

WHEREFORE, Plaintiff, Patrick Mullinix, demands judgment in his favor and against Defendants, Bloss and Moyle, awarding him compensatory damages, exemplary damages, and any further relief as this Court deems just and proper.

## COUNT V – PROMISSORY ESTOPPEL

75. Plaintiff adopts and re-alleges the allegations in Paragraphs 1 through 47 above, as though fully set forth herein.

76. In the alternative to Plaintiff's Count I and Count II for breach of contract, Defendants made several promises to Mullinix that they did not keep.

77. In September 2016, Defendants promised to pay Mullinix certain financial incentives if he declined other more lucrative job opportunities, accepted Red Lion's offer of employment, and maintained such employment until the 2017 and 2018 Earn-Outs were secured under the APA.

78. In February 2018, Defendants promised to pay Mullinix $200,000 if he settled the dispute over the terms of the parties' 2016 Agreement and remained employed with Red Lion until the 2018 Earn Out was secured under the APA.

79. Defendants foresaw or should have reasonably foreseen that Mullinix would substantially rely upon their promises.

80. Mullinix substantially and reasonably relied upon Defendants' promises to his detriment. Mullinix materially changed his position in reliance on Defendants' promises by declining other more lucrative job opportunities, accepting Red Lion's job offer, and maintaining such employment until the Earn-Outs were secured under the APA. Mullinix also materially changed his position by substantially compromising the terms of the parties' 2016 Agreement.

81. Defendants received the Earn-Outs pursuant to the terms of the APA, but Mullinix did not receive the full amounts of the incentives Defendants promised to pay him.

82. Plaintiff is entitled to his reliance damages directly resulting from Defendants' unfulfilled promises.

WHEREFORE, Plaintiff, Patrick Mullinix, hereby demands judgment in his favor and against Defendant for monetary damages, and any such further relief as this Court deems just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a trial by jury on all claims so triable.

Dated: October 30, 2020

                Respectfully submitted,

                **DUSINBERRE, PLLC**
                105 East Palmetto Park Road, Suite A
                Boca Raton, FL  33432
                Tel:    561.827.2291
                Fax:   561.362.8512

                By:   */s/ Rodney H. Dusinberre*
                        Rodney H. Dusinberre
                        FBN: 620483
                        rhd@dusinberre.com

                and

                **LAW OFFICE OF SHERI ALTER, PLLC**
                Sheri M. Alter (FBN:  85332)
                18658 Sea Turtle Lane
                Boca Raton, FL  33498
                Tel:    561.923.0711
                Fax:   561.366.2121
                sheri@sherialterlaw.com

                *Attorneys for Plaintiff, Patrick Mullinix*